## NATIONAL LIFE & ACCIDENT INS. CO. v. CONNIS LYNN.

Western Section. January 21, 1930.

Petition for Certiorari denied by Supreme Court March 15, 1930.

Ewing, King & King, of Memphis, for plaintiff in error.
R. C. Busby, of Memphis, for defendant in error.

SENTER, J. The parties will be referred to as in the case below, Connis Lynn, as plaintiff, and the National Life & Accident Ins. Co., as defendant.

This is a suit on a policy of life insurance issued by the defendant on the life of the wife of plaintiff. The defendant has appealed from the action and judgment of the Circuit Judge in overruling its motion for a new trial and rendering judgment against the defendant for the amount of the policy sued on, $553, plus twenty-five per cent. statutory penalty. The plaintiff introduced in evidence the insurance policy sued on, the application made by the insured for the insurance, and the report of the medical examiner who examined the insured at the direction of the defendant upon the filing of the application, and also the proofs of death, including the certificate of the last attending physician. The plaintiff offered other evidence for the purpose of showing that the deceased was in good health at the time she applied for the insurance, and at the time the policy was delivered to her. Defendant did not introduce any evidence. At the close of plaintiff's evidence the defendant moved the court for a peremptory instruction in its favor, on the ground that the proofs of death, including the certificate of the last attending physician introduced by the plaintiff, showed that the insured was suffering from chronic malaria at the time she applied for the insurance and at the time the insurance policy was delivered to her, and that her death resulted from chronic malaria within about two months after the policy of insurance had been issued and delivered to her.

The trial judge took the motion under advisement, and after considering the motion declined to grant the same, but stated that he was of the opinion that under the evidence the plaintiff was entitled to recover on the insurance policy, and that he was further of the opinion that it was a proper case for a directed verdict in favor of the plaintiff for the amount of the insurance policy. Whereupon, the attorney for plaintiff called the attention of the trial judge to the declaration which also sued for the statutory penalty of twenty-five per cent, because of the alleged wilful failure and refusal of the defendant to pay the claim necessitating the suit. The trial judge then directed the jury to return a verdict in favor of the plaintiff for the amount of the insurance policy, $553, and then submitted the question to the jury as to whether the plaintiff was entitled to recover, under the facts, any amount not to exceed the twenty-five per cent statutory penalty for the alleged wilful failure to pay the same without just or sufficient cause.

In charging the jury on the question of the right of plaintiff to recover under the statute, the statutory penalty the trial judge seemed to have become confused and charged the jury that if they found

that the failure to pay the policy was wilful and wanton and without good cause but was a captious refusal to pay, the plaintiff would be entitled to recover not exceeding twenty-five per cent as a penalty and not exceeding twenty-five per cent attorneys fees. After the jury had retired, the foreman requested the trial judge for some further instruction with reference to the penalty, and the attorney for plaintiff then reminded the trial judge that the statute only provided one penalty not to exceed twenty-five per cent. Whereupon, the trial judge instructed the jury they could return a verdict for one penalty. After the trial judge declined to grant the motion of defendant for a directed verdict, the defendant then moved that the case be continued to the end that they procure the evidence of other physicians who had attended the insured, and this application for a continuance was overruled and disallowed.

Under the first assignment of error it is said that the court erred in overruling defendant's motion for a directed verdict, because the undisputed evidence shows that the insured was suffering from a disease, from which she died, at the time of the issuance of the policy, and that under the terms and provisions of the policy there was no obligation by the defendant to pay the policy, and hence no right of recovery. Under the second assignment of error it is contended that the court erred in directing a verdict for the plaintiff. Under this assignment it is contended that if the defendant was not entitled to a directed verdict, the evidence in the statement of the last attending physician and the evidence that two other doctors had attended and had treated the insured shortly after the policy was issued and delivered, presented questions of fact for the determination of the jury as to whether the insured was in sound health at the time she applied for the policy of insurance and at the time the policy was delivered to her. By the third assignment it is said that the court erred in charging the jury with reference to the penalty, because there was no evidence of bad faith. By the fourth assignment it is said that the court erred in instructing the jury with respect to two twenty-five per cent penalties, because there is no law authorizing the recovery of two penalties; and further, that the court erred in peremptorily instructing the jury to return a verdict for the penalty; and because the verdict of the jury is void because the verdict is not stated in dollars and cents:

The policy of insurance sued on contained among other provisions, the following:

"(a) No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive

or not be in sound health on the date hereof, any amount paid to the company as premiums shall be returned.''

"(b) Proofs of death under this policy shall be made upon blanks to be furnished by the company and shall contain certain answers to each question propounded to the claimant, physicians and other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held.''

The application for the insurance signed by the insured contained the usual questions and answers. Question 18 in the application is, ''Are you in good health?'' Answer: ''Yes.'' Question 23 in the application is as follows:

"Have you ever had heart disease, asthma, tuberculosis, cancer, ulcers, diabetes, fits, hernia, kidney disease, lumbago, syphilis, paralysis, rheumatism, sciatica, vertigo, or any illness, or disorder of the brain, lungs, spine, or nervous system, or any disease not common to both sexes; or suffered the total or partial loss of a hand, foot, eye, or the use thereof? If yes, give particulars.''

To the above question, the applicant, the insured, answered: ''No.''

Just preceding the signature to the application is contained the usual further provision, as follows:

"I hereby apply for insurance for the amount herein named, and I declare that the answers to the above questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my direction. I agree that said answers, with this declaration, shall form the basis of a contract of insurance between me and the National Life & Accident Insurance Company, and that the policy which may be granted by the company in pursuance of this application shall be accepted subject to the conditions and agreements contained in such policy. I further agree that no obligation shall exist against said company on account of this application, although I may have paid premiums thereon, unless said company shall issue a policy in pursuance thereof, and the same is delivered to me.''

Under the first assignment of error it is the contention of appellant that the certificate of the last attending physician made a part of the proofs of death, which was introduced in evidence by the plaintiff showed on its face that the insured was not in sound health at the time she signed the application for the insurance and at the time the policy of insurance was delivered to her, and that the certificate of the last attending physician stated that the insured died of malaria of about five months duration, and that she was affected with a chronic disease, malaria, at the time she ap-

plied for the insurance and at the time the policy was delivered to her. The certificate by Dr. Walker, an interne at the hospital, where the insured died on December 20, 1928, was made out on a form furnished by the insurance company, and among other questions and answers, stated as follows:

"10. Cause of death was as follows: Malaria,—pt. had malaria, died suddenly following intravenous dose of quinine bi hydrocloride (12 grs)

"Duration from personal knowledge or belief: Five months.

"Contributory or secondary: Shock following intravenous medication.

"11. Date of your first visit in last illness? 12-20-28.

"12. Date of your last visit? 12-20-28.

"13. Was cause of death of tubercular nature? No.

"14. Was cause of death of venereal origin? No.

"15. Was deceased afflicted with any deformity or chronic disease? Please specify. No."

From the above it is argued by appellant that the insured at the time of her death was suffering from chronic malaria of a duration of five months.

It is to be noted that in the application for the insurance signed by the insured under Question 23 above quoted, that "malaria" is not included in the list of diseases inquired about. It is also to be noted from the application that she was not asked with reference to malaria, the nearest approach would be Question and answer No. 18 in the application, which question and answer thereto is: "Are you in good health?" Ans. "Yes." It is also to be noted that Dr. Walker, who furnished the certificate of death, was asked if she had any chronic disease, and if so to specify, and he answered "No."

While it is true Dr. Walker, in stating the cause of death and its duration, answered that from knowledge and belief about five months. However, when asked the specific question if she was suffering from any chronic disease, he answered "No." There is no evidence in the record that remotely tends to show that on September 4, 1928, the date she signed the application, that she had any knowledge that she had malaria or any other disease. The insurance company required a physical examination to be made of the applicant by its own physician, or medical examiner, before issuing the policy. This examination was made by Dr. H. L. Berry, and is made out on the regular blank furnished by the insurance company. This examination was made on September 5, 1928, and the report answers all questions which are as follows:

"Question 1. Is Question No. 23 on the other side answered correctly? Yes.

"Question 6. Does applicant appear to be in good health? Yes.

"Question 7. Is there any physical defect or infirmity? No.

"Question 8. Has applicant ever been rejected by this or any other company?

"Question 11. Have you reason to suspect intemperate habits, or, if female, immoral life? No.

"Question 12. Has the applicant within the past five years had any serious illness or injury, spitting of blood, habitual cough, etc? If yes, give date and particulars below. No.

"Question 13. Is the heart diseased? No.

"Question 14. Are the lungs diseased? No.

"Question 15. Do you detect any disease of any kind? No.

"Question 16. Where did you personally examine the applicant? Res."

The examining physician further stated in answer to a question asked in the blank, that in his opinion the applicant was a first-class risk for life insurance.

The policy was issued and delivered on September 24, 1928. All premiums had been paid on the policy to the date of death. Her husband testified that he and the deceased insured married July 4, 1928, and that she was in good health at the time she signed the application and at the time the policy was delivered. He also testified that he had known her for six months prior to the date of their marriage and during that time she was not sick. It appears from plaintiff's proof, and this is nowhere controverted, that on October 15, 1928, Dr. Collins first saw the insured, and visited her three times between October 15, 1928, and October 25, 1928, before she was removed to the hospital. After Dr. Collins saw her it appears that Dr. Dinsmore also saw her four or five times before she was removed to the hospital. She was not sick and had not been sick from January 28, 1928, to October 15, 1928, when 'Dr. Collins was called to see her. She was taken to St. Joseph's Hospital on December 10, suffering with malaria, and died on December 20 following.

The only evidence in the record relied upon by appellant to support the contention that the insured was not in sound health at the time the policy of insurance was applied for and at the time it was delivered, is the answer of Dr. Walker contained in the certificate above referred to, wherein he said that the duration of the disease, according to his belief, was about five months. But he further states that she was not suffering from any chronic disease. If she had any malaria infection at all it had not developed to the point of resulting in any sickness until October 15, 1928, and if she had any malaria infection at all on September 4, 1928, the date of the application, it was not sufficient to be detected by the ex-

amining physician when he made the examination for the company. She had shown no symptoms of malaria until she became ill on October 15th following the issuance of the policy on September. 24, 1928.

The fact that the questions contained in the blank application, which the insured was required to sign enumerated a long list of diseases and physical infirmities, and did not include in the list malaria, would warrant the conclusion that the insurance company did not consider malaria a serious disease, and especially where it was in such a type or form that it could not be detected by the medical examiner who examined the applicant on September 4.

We are of the opinion that there is no evidence in the record upon which a jury could base a conclusion that the insured was not in sound health at the time she applied for the insurance and at the time the policy was issued and delivered.

We recognize the rule that if there is any evidence upon which a jury could, by the most favorable inferences given to the evidence, or to be deduced therefrom, predicate a conculsion that the insured was not in sound health at the time she applied for the policy and at the time it was delivered to her, the question should be submitted to the jury for determination. It is the settled rule that a directed verdict should not be given to a jury where there is any conflict in the evidence, or where under the most favorable inferences to be deduced therefrom, a jury could differ from the court. In all such cases the question should be submitted to the jury under proper instructions from the court. (Western Union Tel. Co. v. Lamb, 140 Tenn. 109; King v. Cox, 126 Tenn. 553; Ry. Co. v. Morgan, 132 Tenn. 1, and numerous other cases that support this rule).

However, we are of the opinion that the court properly overruled the motion made by defendant at the conclusion of plaintiff's evidence for a peremptory instruction in its favor. We are further of the opinion that there was no material conflict in the evidence on the question as to whether the insured was in sound health at the time she made application for the insurance and at the time the policy sued on was issued and delivered to her, and it was not, therefore, error for the learned trial judge to direct a verdict in favor of plaintiff for the amount of the policy sued on. And we are further of the opinion that the learned trial judge was warranted in directing the jury to return a verdict in favor of plaintiff for the amount of the policy sued on. The assignments of error directed to this action of the court are accordingly overruled.

The question made under the third assignment of error with reference to the charge of the court on the subject of the statutory penalty wherein the learned trial judge seemed to have been under

the impression that the statute provided in addition to the twenty-five per cent penalty for a wilful failure without good reason or cause to pay the policy, an additional penalty of twenty-five per cent for attorneys' fees for such wilful failure to pay, was later cured when the attention of the court was called to the provision of the statute, and he then stated to the foreman of the jury that there was only one penalty of twenty-five per cent.

It does not clearly appear from the bill of exceptions whether the entire jury was present when this correction was made, or whether the foreman of the jury alone returned into court after the jury had repaired to the jury room, and requested some further information with reference to the penalty statute. The bill of exceptions is not very full on this matter, but it simply states that the foreman of the jury came in from the jury room and made some inquiry of the trial judge not in the hearing of the court reporter, but it does appear that the attorney for plaintiff then reminded the trial judge that there was but one penalty provided by the statute. The trial judge then informed the foreman of the jury that there was but one penalty of twenty-five per cent and that that would be sufficient. The trial judge had already charged the jury that it was a question for the determination of the jury as to whether the insurance company had wilfully and without good cause or captiously refused to pay the policy and if the jury found that it had they could return a verdict for the statutory penalty. We must assume that the further instruction given, in the absence of anything appearing to the contrary, was properly given by the trial judge to the jury. At any rate the jury only returned a verdict for one penalty, and in so doing the jury must have reached the conclusion that the refusal of the company to pay the policy without suit was not in good faith or for good reason. We find no error in this action of the jury and of the trial judge.

It is the further insistance of appellant that the verdict of the jury is void for the reason that the jury did not fix a definite amount in dollars and cents by its verdict, as required by the statute. The jury returned a verdict in favor of plaintiff for the sum of $553, and for an additional amount of twenty-five per cent of the $553 sued for. We think this was sufficiently definite to meet the requirments of the statute. The principal amount sued for, and for which the verdict was rendered, was stated by the jury in dollars and cents as $553, with the further verdict of twenty-five per cent of that amount to be added as a penalty. Twenty-five per cent of $553 is but a matter of mathematical calculation and certainly it is not indefinite. It was therefore a verdict for a definite sum. There was not only some evidence by plaintiff that would warrant the jury in the conclusion that the refusal of the defendant to pay this policy without

litigation was captious and not in good faith, and this question was determined by the jury and concurred in by the trial judge but there was evidence offered by plaintiff that twenty-five per cent would be a reasonable and proper amount to cover the expense of the attorneys' fees, and there was no evidence to the contrary.

It results that we find no error, and all assignments of error are accordingly overruled, and the judgment is affirmed. Judgment will be entered here for the amount of the judgment below, the cost of the cause including the cost of this appeal, in favor of plaintiff and against the defendant, and sureties on the appeal bond, with interest on the judgment below from the date of its rendition, and for which execution may issue.

Owen and Heiskell, JJ., concur.